EDOUARD K. ZOUTOMOU, *PRO SE*
5953 HEIRLOOM PL.
SALT LAKE CITY, UT 84123
PH: 801-865-6284

FILED
U.S. DISTRICT COURT
2010 JUL 29 A 9: 40
DISTRICT OF UTAH
BY: _____
DEPUTY CLERK

## UNITED STATES DISTRICT COURT
District of Utah, Central Division

| | |
|---|---|
| Edouard K. Zoutomou<br>5953 Heirloom Pl<br>Salt Lake City, UT 84123      Plaintiff<br><br>v.<br><br>Kennecott Utah Copper<br>Rio Tinto Regional Center<br>4700 Daybreak Parkway<br>South Jordan, UT 84095      Defendant<br>(Registered Agent)<br>Corporation Service Company<br>2180 South 1300 East, Suite 650<br>Salt Lake City, UT 84106 | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Case: 2:10cv00719<br>Assigned To : Campbell, Tena<br>Assign. Date : 7/29/2010<br>Description: Zoutomou v. Kennecott<br><br>CASE NUMBER:<br><br>JUDGE: |

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act of 1967, as amended, and the Utah Antidiscrimination Act of 1965, as amended, to correct unlawful employment practices on the basis of age, race, color, and national origin, and to make whole Edouard Zoutomou ("Mr. Zoutomou").

Defendant Kennecott Utah Copper, a fully owned subsidiary of Rio Tinto (hereafter "Kennecott" or "Defendant") terminated Mr. Zoutomou because of his race and because of his age based on the fact that his regional supervisors and directors, bent on subterfuge, chose to single out and blame the "black" man for safety errors for which they were solely responsible.

1

When Defendant found out that they could blame the "black" man, Defendant fired Mr. Zoutomou using his race, age and national origin as the only factors for singling him out.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337 and 1343. This action is authorized and instituted pursuant to §§ 703, 704, 707 of Title VII of the Civil Rights Act of 1964, as amended; 29 U.S.C. §§ 621-29, 634; the Civil Rights Act of 1991, 42 U.S.C. § 1981a; and 42 U.S.C. § 2000e-5(f)(1).

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Utah.

## PARTIES

3. Plaintiff, the aggrieved party, is expressly authorized to bring this action by § 706(f)(1) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. Kennecott Utah Copper, a fully owned subsidiary of Rio Tinto, at all relevant times to this action, has continuously been a Utah corporation doing business in the State of Utah and has continuously had at least 15 employees.

5. At all relevant times to this action, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of §§ 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

6. More than thirty days prior to the institution of this lawsuit, Mr. Zoutomou filed a charge with the Commission alleging violations of Title VII by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

7. Since at least May 15, 2006, Defendant has engaged in unlawful employment practices at its Kennecott's Smelter Plant near Magna, Utah by terminating Mr. Zoutomou because of his age, race, and national origin, in violation of § 703(a) of Title VII, 42 U.S.C. § 2000e-2(a). Specifically, Mr. Zoutomou was hired by Kennecott on approximately September 25, 1989, at the Kennecott Alligator Ridge Mine in Nevada. After being employed at two other Kennecott properties, where he occupied senior engineering and management positions for more than ten years, Mr. Zoutomou was transferred to Kennecott's Smelter Plant near Magna, Utah, on March 19, 2002, into the position of Senior Metallurgical Engineer. On May 4, 2006, during an outage of the As/Cd circuit to repair a hole in the thickener, a number of employees were involved in a safety incident for not wearing full protection gear while entering the thickener. The permit to work and the corresponding working at heights permit, which should have been posted to point out changes in the condition for the inspection and repair were never filled out. When the Plant Operator singled Mr. Zoutomou out for the incident while ignoring all other violations by any white workers, including her boss, who had also entered the thickener, it became very apparent that the Plant Operator was only interested in blaming the black man.

8. Kennecott reported that an investigation was launched on May 8, 2006 and concluded on May 12, 2006, but Kennecott investigators never asked for any input from Mr. Zoutomou. All other people involved in the incident participated in the investigation.

9.  On May 15, 2006, while waiting for the investigative report, Mr. Zoutomou was the only one summoned into the HR office and fired surprisingly for "failure to satisfy performance expectations." However, the alleged "performance expectations" form was not initially considered disciplinary, and each issue had already been dealt with, satisfactorily corrected, and acknowledged in writing as such by Mr Zoutomou's immediate supervisor. Furthermore, some of the issues raised in this sudden disciplinary form went as far back as the start of the plant in 1996 at a time Mr. Zoutomou was Process Superintendent at Kennecott Rawhide Mine in Fallon, Nevada, which had also already been dealt with and resolved satisfactorily. In this sudden reemergence of an old document, management had clearly not followed the disciplinary process, but instead had bent the process and used it as a subterfuge or pretext to fire Mr. Zoutomou only because the Plant Operator and several others had reported interpersonal difficulties with Mr. Zoutomou, when in fact the only interpersonal difficulties they had with Mr. Zoutomou was that he was black, African, and older than the rest.

10. It is a prevalent belief and culture among the white workforce and supervisors at the Smelter Plant near Magna, Utah, that those of the African race are descendants of Cain from the bible who were less valiant prior to coming to live on this earth and thereby black people are considered less deserving of status or rank in society and in the workplace. The employees who claimed interpersonal difficulties only had difficulty, not so much accepting Mr. Zoutomou's position as a Senior

Metallurgical Engineer, but that he could actually receive equal respect or status with white people.

11. Through information and belief, Plant Operator, Management, and Mr. Zoutomou's coworkers and those working under him, despite evidence to the contrary substantiated by his longtime employment at Kennecott punctuated by his high level responsibilities, shared their prevalent beliefs and culture and would only accept a black man as a token "affirmative action" employee – that they had to tolerate as long as he did not ever correct anyone or attempt to tell anyone what to do.

12. Through information and belief, it was when Mr. Zoutomou tried to explain the safety violations and mistakes to the Plant Operator, including her own, that those alleged interpersonal difficulties became too much to handle for those who believed Mr. Zoutomou was only a token black person, and they knew that they would have to have him terminated, lest a black man could be correcting them or telling them what to do.

13. Mr. Zoutomou, who is an experienced metallurgical scientist with masters and doctorate degrees in his field, was not given due respect for his skills or training while at the Utah plant only because of his race, age, and national origin.

14. The effect of the practices complained of have been to deprive Mr. Zoutomou of equal employment opportunities and otherwise adversely affected his status as an employee because of race, age, and national origin.

15. The unlawful employment practices complained of in paragraphs 7-14 above were intentional.

16. The unlawful employment practices complained of in paragraphs 7-14 above were done with malice or with reckless indifference to the federally protected rights of Mr. Zoutomou.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice that discriminates on the basis of race, age, or national origin.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for people of color, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make whole Mr. Zoutomou by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement of Mr. Zoutomou.

D. Order Defendant to make whole Mr. Zoutomou by providing compensation for non-pecuniary losses, including emotional pain, suffering, inconvenience, loss of enjoyment of life and humiliation, in amounts to be determined at trial.

E. Order Defendant to pay Mr. Zoutomou punitive damages for its malicious and/or reckless conduct, in amounts to be determined at trial.

F. Grant such further relief as the Court deems necessary and proper.

## JURY TRIAL DEMANDED

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

RESPECTFULLY SUBMITTED this 29th day of July, 2010

BY: *Edouard K Zoutomou*
Edouard K. Zoutomou, Plaintiff, Pro Se